Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID ARTURO HERNANDEZ ARECHIGA<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center, DAVID J. VENTURELLA Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## <u>INTRODUCTION</u>

1. Petitioner David Arturo Hernandez Arechiga ("Petitioner") is once again detained by U.S. Immigration and Customs Enforcement ("ICE") after this Court previously granted his Petition for Writ of Habeas Corpus and ordered Respondents to immediately release him from immigration custody. Following his court-ordered release, Petitioner remained fully compliant, continued residing at his known address, and appeared for his scheduled ICE reporting appointments as directed. Nevertheless, when Petitioner voluntarily appeared for a scheduled ICE appointment on August 4, 2026, Respondents re-detained him without advance notice, without an individualized determination

that circumstances had changed so as to justify revocation of his liberty, and without providing him any opportunity to contest his re-detention before he was again deprived of his liberty.

2. This is not Petitioner's first habeas proceeding before this District. On March 30, 2026, Petitioner filed a petition for writ of habeas corpus challenging his prior immigration detention in *Hernandez Arechiga v. Bowen, et al.*, Case No. 5:26-cv-01516-AS. After the District Court initially ordered Respondents either to release Petitioner or provide him a constitutionally adequate detention hearing, an Immigration Judge conducted a hearing and denied release based upon purported flight risk. The District Court subsequently determined that the hearing was constitutionally deficient, finding, among other things, that Respondents had presented no evidence establishing that Petitioner posed a flight risk while Petitioner had presented substantial evidence of his long residence, stable employment, and strong family ties in the United States.

3. On May 26, 2026, the Honorable Alka Sagar granted Petitioner's Motion to Enforce and Petition for Writ of Habeas Corpus to the extent Petitioner sought release. The Court expressly found no adequate basis for Petitioner's continued detention and ordered Respondents to "immediately release Petitioner from immigration custody without the imposition of any restraints on his liberty, such as reporting requirements, GPS, or electronic monitoring." Respondents thereafter released Petitioner from ICE custody on May 27, 2026. The prior federal order therefore did not merely recognize Petitioner's eligibility to request bond; it resulted in a federal judgment requiring his immediate release from immigration custody.

4. Following his release, Petitioner did precisely what would be expected of an individual permitted to remain at liberty while his removal proceedings were pending. He resided at his known residential address, remained available to the Government, and continued appearing for his scheduled ICE reporting appointments. Petitioner did not abscond, fail to report, or otherwise engage in conduct

demonstrating that the circumstances underlying the District Court's release order had materially changed.

5. Instead, the events leading to Petitioner's present detention arose from a government-created notice error. Before Petitioner's May 27, 2026 release, Petitioner's counsel notified ICE in writing that Petitioner would reside at 278 Bard Lane, Ventura, California 93001, and ICE acknowledged receipt of that information. Petitioner likewise personally provided ICE with his correct residential address during the release process.

6. Despite possessing Petitioner's correct residential address, ICE subsequently transmitted a Form I-830, Notice to EOIR: Alien Address, to the Immigration Court identifying Petitioner's address as 1585 Kansas Road, San Luis Obispo, California 93405. That address was not Petitioner's residence. It was the address of the San Luis Obispo County Sheriff's Department, where Petitioner had never resided and could not receive his mail. The MTR documents both ICE's possession of Petitioner's correct Ventura address and its subsequent submission of the erroneous San Luis Obispo address.

7. Relying upon the erroneous address supplied by ICE, the Immigration Court mailed Petitioner's Notice of Hearing for June 29, 2026 to the San Luis Obispo address. Petitioner never received that notice. Indeed, the hearing notice was returned to the Immigration Court before the scheduled hearing with a notation indicating that Petitioner was “No Longer in Custody.” Despite the returned notice, Petitioner's address was not corrected and the hearing notice was not re-served at the correct residential address that ICE already possessed.

8. On June 29, 2026, the Immigration Court proceeded in Petitioner's absence and entered an in absentia removal order. The Immigration Court thereafter mailed the removal order to the same erroneous San Luis Obispo address. That mailing was likewise returned to the Immigration Court, further confirming that Petitioner was not receiving mail at the address ICE had supplied.

9. Petitioner, meanwhile, did not flee, conceal himself, or stop reporting to the Government. Unaware that a hearing had occurred or that an in absentia removal order had been entered, Petitioner continued complying with ICE. On August 4, 2026, Petitioner voluntarily appeared for his scheduled ICE reporting appointment. Rather than his appearance demonstrating any failure to comply with the Government's requirements, Petitioner was taken back into ICE custody based upon the in absentia removal order that had been entered without his knowledge.

10. Petitioner immediately sought reopening and rescission of the in absentia removal order. He demonstrated that ICE possessed his correct residential address before his release but nevertheless supplied the Immigration Court with the address of a county sheriff's department, causing both the hearing notice and removal order to be sent to a location where Petitioner had never resided. Petitioner's motion further demonstrated that the hearing notice had actually been returned to the Immigration Court before the hearing occurred.

11. On August 22, 2026, the Immigration Court granted Petitioner's Motion to Reopen and rescinded the in absentia removal order expressly based upon Petitioner's lack of notice, concluding: "No notice. INA §§ 239(a)(1)-(2), 240(b)(5)(C)(ii)." Petitioner's removal proceedings have therefore been reopened, and he is no longer subject to the in absentia final removal order upon which his August 4 detention was predicated.

12. Following reopening, undersigned counsel requested that Respondents voluntarily release Petitioner and restore him to the liberty previously ordered by the District Court. Respondents declined. Through the United States Attorney's Office, ICE has taken the position that Petitioner will remain detained and that he may instead request another bond hearing pursuant to INA § 236(a), 8 U.S.C. § 1226(a).

13. Respondents' position does not cure the constitutional deprivation at issue. Petitioner

had already obtained federal habeas relief resulting in his release after the District Court determined that Respondents had presented no evidence establishing that he posed a flight risk and that his prior bond proceeding was constitutionally deficient. Following that release, Petitioner demonstrated through his conduct that he remained compliant and available to the Government. He nevertheless was re-detained when he voluntarily appeared for a scheduled ICE appointment, without advance notice that Respondents intended to revoke his liberty and without any pre-deprivation opportunity to demonstrate that continued detention was unnecessary.

14. The Government cannot avoid the constitutional protections attendant to Petitioner's established liberty interest merely by detaining him first and directing him to seek a bond hearing afterward. Where the Government has previously released an individual into the community—and particularly where that release resulted from a federal habeas judgment—due process requires constitutionally adequate procedures before that liberty is again revoked, absent circumstances justifying immediate detention.

15. This case therefore presents a narrow constitutional question: whether Respondents may re-detain an individual who was previously ordered released by a federal court, who thereafter remained compliant and continued reporting to ICE as directed, based upon an in absentia removal order caused by the Government's own notice error, and then continue detaining him after that removal order has been rescinded, without providing constitutionally adequate process before revoking his liberty.

16. Petitioner respectfully requests that this Court grant the Petition and order his immediate release from immigration custody. Requiring Petitioner to remain detained while seeking yet another post-deprivation bond hearing does not remedy Respondents' failure to provide constitutionally adequate process before taking him back into custody.

## JURISDICTION

17. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq.*

18. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

19. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

**VENUE**

20. Venue is proper because Petitioner is detained in Desert View Facility, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

**PARTIES**

21. Respondent Tonya Andrews is sued in her official capacity as Warden of the Desert View Facility. Respondent Andrews is the physical custodian of Petitioner.

22. Respondent Todd Lyons is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Lyons is a legal custodian of Petitioner and has authority to release him.

23. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

24. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the

authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

25. Petitioner Hernandez Arechiga is a native and citizen of Mexico.

26. Petitioner entered the United States in 1991, when he was approximately six years old, and was not apprehended or detained at the time of his entry.

27. Petitioner has lived continuously in the United States for approximately thirty-five years and has established substantial family, employment, and community ties.

28. Petitioner is the father of three United States citizen children who rely upon him for emotional and financial support.

29. Petitioner has maintained stable employment, including employment as a baker, and has supported his family through his employment. These are the same longstanding equities considered in Petitioner's prior federal habeas proceeding. The District Court specifically recognized his continuous presence since 1991, stable employment history, and strong family ties, including his United States citizen children.

30. Petitioner has a limited criminal history consisting of a 2015 battery charge for which he completed all court-ordered requirements, including probation and payment of fines. He has no pending criminal charges. This is consistent with the factual record presented in Petitioner's prior habeas proceeding.

31. On or about February 28, 2026, Petitioner was arrested by ICE and taken into immigration custody.

32. On March 4, 2026, DHS served Petitioner with a Notice to Appear charging him solely

under INA § 212(a)(6)(A)(i).

33. Petitioner subsequently sought federal habeas relief in the United States District Court for the Central District of California in *Hernandez Arechiga v. Bowen, et al.*, Case No. 5:26-cv-01516-AS.

34. On April 2, 2026, the District Court partially granted Petitioner's request for a temporary restraining order and directed Respondents either to immediately release Petitioner or provide him an individualized detention hearing before a neutral decisionmaker. The Court further required the Government to bear the burden of proving by clear and convincing evidence that Petitioner presented a flight risk or danger such that continued civil detention was necessary.

35. On April 8, 2026, an Immigration Judge conducted the court-ordered bond hearing and denied Petitioner's release based upon an asserted finding of flight risk.

36. Petitioner thereafter returned to the District Court and filed a Motion to Enforce the habeas order and for immediate release.

37. Respondents did not oppose Petitioner's Motion to Enforce or the relief requested in his habeas petition.

38. In adjudicating Petitioner's request, the District Court determined that the Immigration Judge's bond decision failed to comply with the Court's prior order and denied Petitioner due process. The Court specifically found that the Immigration Judge's flight-risk determination was conclusory and unsupported by a reasoned explanation.

39. The District Court further found it undisputed that Respondents had presented no evidence that Petitioner posed a flight risk, while Petitioner presented extensive evidence demonstrating his deep and longstanding ties to the United States.

40. On May 26, 2026, the Honorable Alka Sagar granted Petitioner's Motion to Enforce and

Petition for Writ of Habeas Corpus to the extent Petitioner sought release and ordered Respondents to immediately release Petitioner from immigration custody without the imposition of restraints upon his liberty.

41. Respondents complied with the Court's order and released Petitioner from ICE custody on May 27, 2026.

42. Following his release, Petitioner returned to the community and resided at 278 Bard Lane, Ventura, California 93001.

43. Before Petitioner's release, undersigned counsel advised ICE in writing that Petitioner would reside at that address, and ICE acknowledged receipt of that information.

44. Petitioner separately provided ICE with the same residential address during the release process.

45. Petitioner remained compliant following his release. He remained at his known residence, remained available to ICE, and continued appearing for his scheduled ICE reporting appointments.

46. At no time following Petitioner's May 27 release did Respondents notify Petitioner that he had violated any condition of release or advise him that his conduct warranted renewed detention.

47. Despite possessing Petitioner's correct residential address, ICE Deportation Officer D. Heard subsequently submitted Form I-830 to the Immigration Court listing Petitioner's purported address as 1585 Kansas Road, San Luis Obispo, California 93405.

48. That was not Petitioner's residence. The address corresponds to the San Luis Obispo County Sheriff's Department. Petitioner never resided there and could not receive mail there.

49. Relying upon the address supplied by ICE, the Immigration Court mailed Petitioner's Notice of Hearing for June 29, 2026 to the San Luis Obispo address.

50. Petitioner never received the hearing notice.

51. On or about June 8, 2026—approximately three weeks before the scheduled hearing—the notice was returned to the Immigration Court with a notation indicating that Petitioner was "No Longer in Custody."

52. Despite the returned notice, neither Petitioner's address nor the service problem was corrected before the June 29 hearing, and Petitioner was not re-served at the Ventura address already provided to ICE.

53. On June 29, 2026, the Immigration Court proceeded in Petitioner's absence and entered an in absentia removal order.

54. The Immigration Court subsequently mailed that removal order to the same erroneous San Luis Obispo address. The removal order was likewise returned to the Immigration Court, further confirming that Petitioner was not receiving mail at the address supplied by ICE.

55. Petitioner was unaware that the June 29 hearing had occurred or that an in absentia removal order had been entered against him.

56. Petitioner nevertheless continued complying with ICE and appearing for his scheduled reporting appointments.

57. On August 4, 2026, Petitioner voluntarily appeared for his scheduled ICE appointment.

58. Petitioner did not attempt to evade ICE or avoid his reporting obligation. To the contrary, he presented himself to ICE precisely as directed.

59. Respondents nevertheless took Petitioner back into immigration custody based upon the in absentia removal order.

60. Prior to taking Petitioner back into custody, Respondents did not provide him advance notice that they intended to revoke his previously granted liberty.

61. Respondents did not identify any violation of Petitioner's post-release obligations or any materially changed circumstance demonstrating that Petitioner had become a danger to the community or flight risk.

62. Petitioner was not afforded a pre-deprivation hearing before a neutral decisionmaker at which he could contest the factual or legal basis for revoking his liberty.

63. After learning of the in absentia order and his resulting detention, Petitioner promptly moved to reopen his removal proceedings and rescind the June 29, 2026 order based upon lack of notice.

64. Petitioner's Motion documented that ICE possessed his correct Ventura address before his release but nevertheless provided the Immigration Court with the address of the San Luis Obispo County Sheriff's Department. It further demonstrated that the hearing notice had been returned to the Immigration Court before the hearing and that the subsequent removal order was likewise returned.

65. On August 22, 2026, the Immigration Court granted Petitioner's Motion to Reopen and rescinded the in absentia removal order based expressly upon lack of notice under INA §§ 239(a)(1)-(2) and 240(b)(5)(C)(ii).

66. Petitioner's removal proceedings have therefore been reopened and remain pending before the Immigration Court.

67. Petitioner is no longer subject to the in absentia removal order that precipitated his August 4, 2026 detention.

68. Following the Immigration Court's order reopening Petitioner's proceedings, undersigned counsel contacted the United States Attorney's Office and requested that ICE voluntarily release Petitioner rather than requiring Petitioner to return to federal court.

69. Counsel explained that Petitioner had remained compliant following his prior court-

ordered release, that he was detained when he appeared for his scheduled ICE appointment, and that the Immigration Court had now rescinded the in absentia order based upon lack of notice.

70. Respondents declined Petitioner's request for release. The United States Attorney's Office advised undersigned counsel that ICE opposes Petitioner's release and takes the position that Petitioner may instead request a bond hearing pursuant to INA § 236(a).

71. Petitioner therefore remains detained notwithstanding his prior court-ordered release, his demonstrated compliance while at liberty, and the Immigration Court's rescission of the in absentia removal order that precipitated his re-detention.

72. Petitioner respectfully seeks immediate release from immigration custody and restoration of the liberty of which he was deprived without constitutionally adequate pre-deprivation process.

## STATUTORY FRAMEWORK

73. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1229a. Individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

74. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under 8 U.S.C. § 1225(b)(2).

75. Finally, the INA also provides for detention of noncitizens who are subject to final orders of removal, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(c) was most recently amended earlier this year by the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025).

76. Following enactment of the IIRIRA, the EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under section 1225 and that they were instead detained under section 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior to the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section 1252(a)).

77. Petitioner challenged that position in his prior federal habeas proceeding, *Hernandez Arechiga v. Bowen, et al.*, Case No. 5:26-cv-01516-AS. On April 2, 2026, the District Court ordered Respondents either to immediately release Petitioner or provide him an individualized detention hearing before a neutral decisionmaker at which the Government bore the burden of establishing by clear and convincing evidence that Petitioner posed a flight risk or danger such that continued civil detention was necessary.

78. After an Immigration Judge conducted that hearing and denied release based upon

purported flight risk, Petitioner returned to the District Court seeking enforcement of the Court's order. The District Court ultimately determined that the bond hearing was constitutionally deficient. Among other things, the Court found it undisputed that Respondents had presented no evidence that Petitioner posed a flight risk, while Petitioner had presented extensive evidence of his longstanding residence, stable employment, and strong family ties in the United States.

79. On May 26, 2026, the District Court granted Petitioner's Motion to Enforce and Petition for Writ of Habeas Corpus to the extent Petitioner sought release. The Court ordered Respondents to "immediately release Petitioner from immigration custody without the imposition of any restraints on his liberty, such as reporting requirements, GPS, or electronic monitoring." Respondents released Petitioner on May 27, 2026.

80. Third, 8 U.S.C. § 1231(a) governs detention following entry of a final order of removal. For a period following June 29, 2026, Petitioner was subject to an in absentia removal order entered after he failed to appear for an Immigration Court hearing of which he had received no notice.

81. That in absentia order, however, no longer governs Petitioner's immigration proceedings. On August 22, 2026, the Immigration Court granted Petitioner's Motion to Reopen and rescinded the in absentia removal order based expressly upon lack of notice under INA §§ 239(a)(1)-(2) and 240(b)(5)(C)(ii). Petitioner's removal proceedings are therefore once again pending before the Immigration Court, and Petitioner is not presently subject to a final order of removal.

82. Following reopening, undersigned counsel requested that Respondents voluntarily release Petitioner. Respondents declined. Significantly, Respondents no longer contend, as they did during Petitioner's prior detention, that Petitioner is subject to mandatory detention under § 1225(b) and categorically ineligible for a bond hearing. Instead, the United States Attorney's Office has advised undersigned counsel that ICE opposes Petitioner's release but that Petitioner "can request a bond

hearing under 236(a) with the immigration court."

83. Accordingly, Respondents themselves now recognize that Petitioner's present detention is governed by the discretionary detention framework of INA § 236(a), 8 U.S.C. § 1226(a). The present dispute therefore does not require this Court to resolve the § 1225(b) versus § 1226(a) statutory question that arose during Petitioner's prior detention.

84. Nor does Petitioner contend that § 1226(a) categorically deprives the Government of authority to detain a noncitizen during pending removal proceedings. Rather, the constitutional question presented here concerns the process Respondents were required to provide before revoking Petitioner's previously restored liberty and returning him to immigration detention.

85. The existence of statutory detention authority under § 1226(a) does not itself resolve that constitutional question. Statutory authority to arrest or detain and the constitutional adequacy of the procedures used to deprive an individual of liberty are distinct inquiries. Even where Congress has authorized detention, the Government's exercise of that authority remains constrained by the Due Process Clause of the Fifth Amendment.

86. That distinction is particularly important here because Petitioner's present detention is not an initial custody determination. Petitioner had already been released into the community pursuant to a federal habeas judgment after the District Court determined that his prior bond proceeding was constitutionally deficient and that Respondents had failed to present evidence establishing that he posed a flight risk.

87. Following that court-ordered release, Petitioner remained at liberty in the community and demonstrated through his conduct that he remained available to the Government. He continued appearing for scheduled ICE appointments and did not abscond, evade immigration authorities, or engage in conduct establishing that detention had become necessary.

88. Respondents nevertheless re-detained Petitioner on August 4, 2026 when he voluntarily appeared for a scheduled ICE appointment. Respondents did so without providing Petitioner advance notice that his previously restored liberty would be revoked, without identifying any violation of his post-release obligations, without identifying materially changed circumstances demonstrating that detention had become necessary, and without providing Petitioner an opportunity to contest the basis for his renewed detention before a neutral decisionmaker.

89. Moreover, the immediate predicate for Petitioner's re-detention was the June 29, 2026 in absentia removal order. That order resulted from a hearing notice mailed to an erroneous address supplied by ICE despite ICE's possession of Petitioner's correct residential address. Petitioner's Motion to Reopen documented that both the hearing notice and the subsequent removal order were returned to the Immigration Court. The Immigration Court has now rescinded that order expressly because Petitioner did not receive the notice required by statute.

90. Thus, the circumstances existing today are materially different from those Respondents relied upon when they took Petitioner into custody on August 4, 2026. Petitioner is no longer subject to a final order of removal. His removal proceedings have been reopened. Respondents now acknowledge that his detention falls under § 1226(a). Yet Respondents continue to detain him and take the position that his remedy is to remain incarcerated while requesting another bond hearing before the Immigration Court.

91. That position does not resolve the constitutional violation presented in this Petition. Petitioner's claim is not merely that § 1226(a) entitles him to request a bond hearing after detention. His claim is that, after the Government had restored his liberty pursuant to a federal habeas judgment and he thereafter remained compliant while living in the community, the Due Process Clause prohibited Respondents from revoking that liberty without constitutionally adequate pre-deprivation process.

92. A post-deprivation bond hearing does not answer whether Respondents were constitutionally permitted to re-detain Petitioner in the first instance without advance notice, an individualized determination based upon materially changed circumstances, a meaningful opportunity to respond, and a hearing before a neutral decisionmaker. Respondents cannot transform the question whether Petitioner's liberty was lawfully revoked into the separate question whether he may now seek release after that liberty has already been taken from him.

93. The circumstances of Petitioner's case underscore the constitutional deficiency. The District Court previously determined that Respondents had presented no evidence establishing that Petitioner posed a flight risk. After being released, Petitioner supplied additional real-world evidence confirming that conclusion: he remained in the community, remained available to immigration authorities, and voluntarily appeared for his scheduled ICE appointment. It was his compliance with ICE—not an attempt to evade the Government—that placed him in Respondents' custody on August 4, 2026.

94. Respondents therefore cannot rely solely upon § 1226(a)'s general detention authority to justify the procedure by which Petitioner's established liberty was revoked. The Fifth Amendment required constitutionally adequate procedures before Respondents deprived Petitioner of that liberty, absent circumstances permitting immediate detention followed by adequate process. No such process preceded Petitioner's August 4, 2026 re-detention.

95. Petitioner's present detention consequently raises a constitutional question independent of whether § 1226(a) generally authorizes detention during removal proceedings: whether Respondents may revoke the liberty of a previously released and compliant noncitizen without advance notice, without an individualized determination that materially changed circumstances warrant renewed detention, without a meaningful opportunity to respond, and without a pre-deprivation hearing before

a neutral decisionmaker.

96. Because Respondents provided none of those protections before re-detaining Petitioner, and because Petitioner remains detained even after the in absentia order precipitating his detention was rescinded for lack of notice, Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment. Petitioner therefore seeks restoration of the liberty he possessed immediately before Respondents' unconstitutional re-detention and an order directing his immediate release from immigration custody.

## CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Petitioner's Procedural Due Process Rights

1. The allegations in the above paragraphs are realleged and incorporated herein.

2. The Fifth Amendment prohibits the government from depriving a person of liberty without due process of law

3. Under Mathews v. Eldridge, 424 U.S. 319 (1976), courts evaluate procedural due process claims by considering: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of additional safeguards; and (3) the governmental interests at stake.

4. The private interest at stake here—freedom from physical detention—is among the most fundamental liberty interests protected by the Constitution.

5. Petitioner's liberty interest is particularly substantial because his present detention does not arise from an initial custody determination. Petitioner had previously obtained federal habeas relief resulting in his release from immigration custody after the District Court determined that his prior bond proceeding was constitutionally deficient and that Respondents had presented no evidence establishing that Petitioner posed a flight risk.

6. On May 26, 2026, the District Court granted Petitioner's prior Petition for Writ of Habeas Corpus to the extent it sought release and ordered Respondents to immediately release Petitioner from immigration custody without the imposition of restraints upon his liberty. Respondents released Petitioner on May 27, 2026.

7. Following his court-ordered release, Petitioner remained at liberty in the community and demonstrated through his conduct that he remained available to immigration authorities. Petitioner remained at his known residence and continued appearing for scheduled ICE appointments.

8. Petitioner did not abscond, evade immigration authorities, violate any identified release requirement, or engage in any conduct demonstrating that he had become a danger to the community or flight risk following his release.

9. The risk of erroneous deprivation was extraordinarily high because Respondents revoked Petitioner's previously restored liberty without advance notice, without identifying any violation or materially changed circumstance warranting renewed detention, without providing Petitioner a meaningful opportunity to respond, and without an individualized pre-deprivation determination by a neutral decisionmaker.

10. That risk was not merely theoretical. Petitioner's re-detention arose from an in absentia removal order entered after ICE supplied the Immigration Court with an erroneous address despite possessing Petitioner's correct residential address.

11. As a result of that error, Petitioner did not receive notice of his June 29, 2026 Immigration Court hearing. Nevertheless, Petitioner continued making himself available to ICE and voluntarily appeared for his scheduled ICE reporting appointment on August 4, 2026.

12. On August 4, 2026, Respondents re-detained Petitioner when he appeared for that scheduled ICE appointment. Prior to revoking Petitioner's liberty, Respondents failed to provide:

a. advance notice that his liberty would be revoked;

b. notice of any alleged violation of his post-release obligations or any materially changed circumstance warranting detention;

c. a meaningful opportunity to contest the factual or legal basis for his re-detention;

d. an individualized determination that renewed detention was necessary; or

e. a pre-deprivation hearing before a neutral decisionmaker.

13. Additional procedural safeguards—including advance notice of the asserted grounds for re-detention, disclosure of any alleged changed circumstances, a meaningful opportunity to respond, and an individualized determination before a neutral decisionmaker—would have substantially reduced the risk of an erroneous deprivation while imposing comparatively minimal administrative burdens.

14. The absence of such safeguards was particularly consequential here because the asserted predicate for Petitioner's re-detention—the in absentia removal order—resulted from a government-created notice error.

15. On August 22, 2026, the Immigration Court granted Petitioner's Motion to Reopen and rescinded the in absentia removal order expressly based upon lack of notice under INA §§ 239(a)(1)-(2) and 240(b)(5)(C)(ii).

16. Petitioner's removal proceedings have therefore been reopened, and the in absentia removal order that precipitated Petitioner's August 4, 2026 re-detention no longer exists.

17. Respondents nevertheless continue to detain Petitioner. Respondents have declined Petitioner's request for voluntary release and instead take the position that Petitioner may seek a bond hearing pursuant to INA § 236(a), 8 U.S.C. § 1226(a).

18. The availability of a post-deprivation bond hearing does not resolve whether Respondents provided constitutionally adequate process before revoking Petitioner's previously restored liberty.

Petitioner's procedural due process claim concerns the constitutionality of the process by which Respondents re-detained him, not merely the availability of a mechanism through which he may subsequently seek release.

19. Respondents identified no materially changed circumstances arising from Petitioner's conduct following his May 27, 2026 release that required immediate re-detention without prior process. To the contrary, Petitioner's conduct following release demonstrated continued compliance and availability to the Government, culminating in his voluntary appearance at the ICE appointment at which Respondents took him back into custody.

20. Respondents therefore revoked Petitioner's previously restored liberty without constitutionally adequate advance notice, without a meaningful opportunity to respond, without an individualized determination that changed circumstances warranted renewed detention, and without a pre-deprivation hearing before a neutral decisionmaker.

21. Under the circumstances presented here, the Government's statutory authority to detain Petitioner pursuant to 8 U.S.C. § 1226(a) does not eliminate the procedural protections required by the Due Process Clause before Respondents may revoke an established liberty interest.

22. Because the constitutional injury occurred when Respondents revoked Petitioner's liberty without constitutionally adequate pre-deprivation process, requiring Petitioner to remain detained while pursuing a subsequent bond hearing does not itself cure the deprivation that has already occurred.

23. Petitioner's continued detention following Respondents' unconstitutional revocation of his previously restored liberty violates the Due Process Clause of the Fifth Amendment.

24. Petitioner is therefore entitled to habeas relief restoring the liberty he possessed immediately before his August 4, 2026 re-detention and ordering his immediate release from immigration custody.

**COUNT TWO**

**Violation of Fifth Amendment Right to Substantive Due Process**

25. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

26. Petitioner is presently in the physical custody of Respondents and is restrained of his liberty within the meaning of 28 U.S.C. § 2241.

27. Section 2241 authorizes federal courts to grant habeas relief where a person is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

28. Petitioner's present detention is materially distinct from an initial immigration custody determination. Petitioner previously challenged his detention through a petition for writ of habeas corpus, and the District Court ultimately granted that Petition to the extent Petitioner sought release.

29. In doing so, the District Court determined that Petitioner's prior bond hearing was constitutionally deficient and that Respondents had failed to present evidence demonstrating that Petitioner posed a flight risk.

30. On May 26, 2026, the District Court ordered Respondents to immediately release Petitioner from immigration custody without restraints upon his liberty, and Respondents released Petitioner on May 27, 2026.

31. Following his release, Petitioner remained available to immigration authorities and continued appearing for scheduled ICE appointments. Respondents identified no post-release violation or materially changed circumstance arising from Petitioner's conduct that demonstrated renewed detention was necessary.

32. On August 4, 2026, Petitioner voluntarily appeared for a scheduled ICE appointment and was re-detained based upon an in absentia removal order entered following a hearing of which Petitioner

had received no notice.

33. The lack of notice resulted from ICE supplying the Immigration Court with an erroneous address despite possessing Petitioner's correct residential address.

34. On August 22, 2026, the Immigration Court granted Petitioner's Motion to Reopen and rescinded the in absentia removal order expressly based upon Petitioner's lack of notice.

35. Notwithstanding the rescission of the order that precipitated Petitioner's re-detention, Respondents continue to hold Petitioner in immigration custody.

36. Respondents have declined Petitioner's request for voluntary release and instead contend that Petitioner may seek a bond hearing pursuant to INA § 236(a), 8 U.S.C. § 1226(a).

37. Petitioner's eligibility to seek a post-deprivation custody determination does not resolve the constitutional violations alleged herein or eliminate this Court's authority under § 2241 to remedy detention imposed and continued in violation of the Fifth Amendment.

38. As alleged in Counts One and Two, Respondents deprived Petitioner of his previously restored liberty without constitutionally adequate pre-deprivation process and continue to detain him under circumstances that are arbitrary and constitutionally impermissible.

39. Petitioner's present detention therefore constitutes custody in violation of the Constitution within the meaning of 28 U.S.C. § 2241(c)(3).

40. Because Petitioner's constitutional injury concerns the unlawful deprivation and continued restraint of his physical liberty, habeas corpus provides an appropriate remedy.

41. Petitioner respectfully requests that the Court grant the Writ and order Respondents to immediately release Petitioner from immigration custody.

**COUNT THREE**

**Violation of the Immigration and Nationality Act**

42. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

43. Shortly after entering the United States, Petitioner was arrested pursuant to a Form I-200 and subsequently released on his own recognizance by DHS.

44. DHS thereafter permitted Petitioner to remain at liberty in the United States for nearly three years while pursuing his asylum application.

45. Respondents now contend that Petitioner is subject to detention under 8 U.S.C. § 1225(b) and ineligible for meaningful custody review.

46. Respondents rely upon DHS's July 8, 2025 Interim Guidance, Matter of Q. Li, and Matter of Yajure-Hurtado to support that position.

47. Neither Matter of Q. Li nor Matter of Yajure-Hurtado authorizes DHS to revoke previously granted liberty and re-detain fully compliant noncitizens years after release without individualized justification.

48. If Petitioner is detained at all following DHS's grant of liberty, such detention must comport with the statutory framework governing discretionary custody determinations and cannot be transformed into mandatory detention through a retroactive reinterpretation of the detention statutes.

49. Respondents' categorical reliance upon § 1225(b) exceeds their statutory authority and is contrary to law.

50. Because Petitioner's detention is not authorized by the INA, habeas relief under 28 U.S.C. § 2241 is warranted.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241 and all other applicable

provisions of law;

2. Issue a Writ of Habeas Corpus declaring that Petitioner's re-detention and continued detention violate the Due Process Clause of the Fifth Amendment;

3. Declare that Respondents violated Petitioner's procedural due process rights by revoking his previously restored liberty without advance notice, without identifying materially changed circumstances warranting renewed detention, without providing a meaningful opportunity to respond, and without providing an individualized pre-deprivation hearing before a neutral decisionmaker;

4. Declare that Petitioner's continued detention, following his prior court-ordered release, his subsequent compliance while at liberty, and the Immigration Court's rescission of the in absentia removal order that precipitated his re-detention, violates the Fifth Amendment;

5. Order Respondents to immediately release Petitioner from ICE custody and restore Petitioner to the liberty status he possessed immediately before his August 4, 2026 re-detention;

6. Enjoin Respondents from re-detaining Petitioner absent materially changed circumstances and constitutionally adequate pre-deprivation process, including advance notice of the factual and legal basis for any proposed re-detention, a meaningful opportunity to respond, and an individualized hearing before a neutral decisionmaker at which Respondents bear the applicable burden of establishing that renewed detention is necessary;

7. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of these proceedings absent prior authorization from this Court;

8. Retain jurisdiction to enforce the Court's judgment and any injunctive relief entered in this matter;

9. Award Petitioner his reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent permitted by law; and

10. Grant such other and further relief as the Court deems just, proper, and equitable.

Respectfully,

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am counsel for Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Center and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 28th day of August, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.